IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

RICHARD WINN, SR.,

        Plaintiff,    No. 2:10-CV-01030 KJM CMK

  vs.

LASSEN CANYON NURSERY, INC., et al.,

        Defendants.    <u>ORDER</u>
_____/

      This case was on the court's April 12, 2013 calendar for the parties' cross-motions for summary judgment. Denise Winn appeared for plaintiff and Martin Jensen appeared for defendants. For the reasons explained below, the court GRANTS defendants' motion and DENIES plaintiff's motion.

/////
/////
/////
/////
/////
/////

1

I. BACKGROUND

    A.    Lassen Canyon Nursery 401(k) Profit Sharing Plan

Defendant Lassen Canyon Nursery, Inc. (LCN) created a 401(k) profit-sharing plan for its employees in 1997 (the "Plan"[1]). (Defs.' Statement of Undisputed Material Facts ¶ 1, ECF 66.)[2] LCN appointed itself as the Plan Administrator. (*Id.* ¶ 2.) In 2007, the terms of the Plan (the "Pre-2008 Plan") were amended; this amended version of the plan (the "Amended Plan") became effective on August 1, 2007. (Ex. A at 21, ECF 71-1.) Also in 2007, LCN appointed defendant Elizabeth Ponce, a LCN officer and director, as Plan Trustee. (ECF 66 ¶¶ 2-3.) As Administrator, LCN hired Bidwell Consulting Services (BCS) to assist with administering the Plan. (*Id.* ¶ 5.) Defendant Dennis Cargile is an employee of BCS. (*Id.* ¶ 11.) LCN also hired an investment advisor, Fred Sittner, to provide the Trustee with investment information. (*Id.* ¶ 6.)

    Both the Pre-2008 Plan and the Amended Plan provide that the responsibility of the Administrator is to administer the Plan according to its terms and that the Administrator "shall have the power and discretion to construe the terms of the Plan and determine all questions arising in connection with the administration, interpretation, and application of the Plan." (Amended Plan § 2.4, Ex. D, ECF 71-4, 71-5; Pre-2008 Plan § 2.4, Ex. E, ECF 71-6.) Both versions of the Plan also provide that the Trustee is responsible for the funds that LCN contributes to the Plan, for maintaining records, and for distributing benefits under the Administrator's direction. (Amended Plan § 7.1; Pre-2008 Plan § 7.1.)

    The Amended Plan states that "[t]he Administrator shall direct the Trustee (or Insurer), as of each Valuation Date, to determine the net worth of the assets comprising the Trust Fund as it exists on the Valuation Date." (Amended Plan § 5.1.) This provision in the Pre-2008

---

[1] The court refers to the "Pre-2008 Plan" and "Amended Plan" when necessary to distinguish between different version of the Plan contract; otherwise, the court refers to the "Plan."

[2] The court cites to defendants' statement of undisputed facts, to the extent they are not disputed by plaintiff.

2

Plan is identical, except that it states "Trustee," not "Trustee (or Insurer)." (Pre-2008 Plan § 5.1.) In any event, the Plan defines "Valuation Date" as follows:

> . . . the date or dates specified in the Adoption Agreement. Regardless of any election to the contrary, the Valuation Date shall include the Anniversary Date and may include any other date or dates deemed necessary or appropriate by the Administrator for the valuation of Participants' Accounts during the Plan Year, which may include any day that the Trustee (or Insurer), any transfer agent appointed by the Trustee (or Insurer) or the Employer, or any stock exchange used by such agent, are open for business

(Amended Plan § 1.83.) The "Adoption Agreement is "the separate agreement which is executed by the Employer and sets forth the elective provisions of this Plan and Trust as specified by the Employer." (Amended Plan § 1.6; Pre-2008 Plan § 1.5.)

The Plan Year begins on August 1 of any given year and ends on July 31 of the following year. (Plan Summary, Ex. A at 21, ECF 71-1.) Valuations "are generally made annually on the last day of the Plan Year." (*Id.*)

B. Plaintiff's Benefits

Plaintiff Richard Winn, Sr. is a former LCN employee and Plan participant. (Defs.' Statement of Undisputed Material Facts ¶ 19.) Winn voluntarily left his position at LCN in November 2007. (*Id.* ¶ 20.) At or around the same time that Winn left LCN, LCN employees Sue Ann Metz, Ronald Yamasuki, Roger Hamamura and Patty Hamamura also voluntarily left their jobs. (Defs.' Statement of Undisputed Material Facts ¶ 21.)

In September 2008, plaintiff received an "Application for Benefits" informing him that his vested Plan benefits were $122,167.76, based on the valuation of the Plan for the 2007-2008 year, which ended on July 31, 2008. (*Id.* ¶¶ 22-24.) The Application stated that "[t]he amount of [plaintiff's] distribution may increase or decrease based on [his] date of distribution and investment performance." (*Id.* ¶ 25.)

/////
/////
/////

The Plan funds suffered significant losses in 2008, losing $188,591.68 in value in September 2008, $299,601.97 in October 2008, and $106,854.22 in November 2008. (*Id.* ¶ 26.)[3] The Trustee received notice of the decline in value for each month on the second week of the following month. (*Id.* ¶ 27.) On November 20, 2008, the Trustee, Sittner and LCN decided to revalue the Plan assets the next day, on November 21, 2008 (the "November 21 revaluation). (*Id.* ¶ 31.)

Sometime prior to the November 21 revaluation, Metz, the Hamamuras and Yamasuki submitted their applications for benefits. Metz received a distribution of $18,728.81 on September 24, 2008. The Hamamuras received their combined distribution of $300,363.23 on October 7, 2008. Yamasuki's distribution of $43,951.11 was approved on October 21, 2008 and he received it on November 18, 2008. (*Id.* ¶ 29.)

LCN received plaintiff's application for benefits in mid-November.[4] Plaintiff's distribution of benefits was based on the November 21 revaluation. (*Id.* ¶ 32.) Plaintiff received $80,178.09, which was reduced to $64,142.47 after taxes. (*Id*.)

Plaintiff's Second Amended Complaint (SAC) alleges the following claims against all defendants: (1) a claim for declaratory judgment against all defendants, stating that defendants breached the Pre-2008 and/or Amended Plan; (2) a claim for breach of the Pre-2008 and/or Amended Plan under 29 U.S.C. § 1001, *et seq.*; (3) a claim for breach of duty of good faith and fair dealing; (4) a claim for misappropriation and conversion;[5] (6) a claim for breach of contract;

---

[3] Because plaintiff does not dispute that the Plan lost value in September, October, and November 2008, it is unnecessary to consider defendants' request that the court take judicial notice that an economic downturn occurred during these months. (ECF 70.)

[4] Plaintiff asserts that the application was received on or around November 9, however, the declaration of Richard Winn submitted in support only states that plaintiff sent the application on November 9, not when it was received. (Decl. of Richard Winn ¶ 16, ECF 72-1.) Plaintiff has submitted no other evidence relevant to this issue.

[5] The fifth claim in the SAC was for violation of the right to inspect LCN's records under California corporate law. Plaintiff indicated at hearing that he has abandoned this claim and mistakenly included it in the SAC.

4

(7) a claim for declaratory judgment stating that LCN's issuance of the plan was invalid or alternatively, that plaintiff is entitled to purchase LCN shares that will give him an ownership equivalent to what it was before November 21, 2008; (8) breach of the Pre-2008 and/or Amended Plan; and (9) breach of fiduciary duty.  (ECF 58.)

Defendants filed a motion for summary judgment on March 12, 2013 (ECF 64.) Plaintiff filed his motion for summary judgment, as well as his opposition to defendants' motion, on March 29.  (ECF 72, 73.)  Defendants filed a reply on April 5.  (ECF 75.)[6]

II.  STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[7]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

---

[6] Defendants objected to plaintiff's motion for summary judgment, filed fourteen days before hearing, on the grounds that it was untimely filed and improperly noticed for hearing. (ECF 77.)  Defendants did not file an opposition to the motion. Under Local Rule 230(e), plaintiff's motion was timely because it was related to defendants' motion for summary judgment, meaning that it was due fourteen days before hearing.

[7] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

5

nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III.   ANALYSIS

   A.  State Law Claims

Defendants argue that to the extent plaintiff alleges claims under state law, summary judgment must be granted in defendants' favor because ERISA preempts state law. (ECF 65 at 7.) Plaintiff's third cause of action is titled "breach of duty of good faith and fair dealing" and his fourth cause of action is titled "misappropriation and conversion." The Ninth Circuit has held that claims for breach of the duty of good faith and fair dealing regarding insured employee benefit plans are preempted by ERISA. *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007 (9th Cir. 1998) (citing *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1131 (9th Cir. 1992)). Claims for conversion of plan benefits also are preempted by ERISA, *see Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1141 (N.D. Cal. 2009); *Trustees of S. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d 1156, 1170 (C.D. Cal. 2006), as are misappropriation claims, *Busse v. Shaklee Corp.,* No. C 10-359 SI, 2010 WL 1346406, at *7-8 (N.D. Cal. Apr. 6, 2010) (citing *Bast*, 150 F.3d at 1008-10). At hearing, plaintiff clarified that he does not oppose defendants' preemption arguments. The court grants defendants' motion for summary judgment as to plaintiff's third and fifth claims and denies plaintiff's motion as to these same claims.

B.  ERISA Violations

In alleging claims for breach of defendants' obligations under ERISA, plaintiff invokes three provisions of ERISA in his complaint.  The first, 29 U.S.C. § 1132(c), allows a plan participant to sue his or her plan administrator for refusing to provide certain information. Sections 1022 and 1024 together require a summary plan description to be provided to participants of employee benefit plans.  29 U.S.C. §§ 1022, 1024.

Plaintiff argues that LCN had no authority to conduct the November 21 revaluation because it was contrary to the terms of the Pre-2008 Plan.  (ECF 73 at 5.)  But even if LCN did have this authority, plaintiff argues, it breached its fiduciary duties to plaintiff by recalculating his benefits based on the November 21 valuation, while leaving the benefits of his former co-workers unchanged.  (*Id.* at 8.)

Based on these claims, it appears that plaintiff actually means to rely on 29 U.S.C. § 1132(a) and § 1104, which respectively allow a plan participant to bring a civil action to recover benefits or enforce the terms of the plan and require a plan fiduciary to prudently discharge his or her duties, rather than on the provisions of ERISA pled in his complaint.  Accordingly, the court will consider plaintiff's arguments that defendants improperly withheld benefits and violated their fiduciary duties.

Plaintiff asserts that in order to determine whether LCN abused its discretion as Administrator, the court must decide as an initial matter if the Amended Plan or the Pre-2008 Plan controls.  Plaintiff's basis for contesting the applicability of the Amended Plan is unclear, as he does not dispute that the 2008 Plan was effective as of August 1, 2007, several months before his November 2007 termination date.  (*See* ECF 73 at 4.)  Moreover, as defendants argue, plaintiff does not specify any material difference between the two versions of the Plan.  (ECF 65 at 9-10.) The court therefore considers plaintiff's claims only as they relate to the Amended Plan.

1.  Standard of Review

If an employee benefits plan unambiguously confers discretion on the administrator to construe the terms of the plan, the administrator's actions are reviewed under an abuse of discretion standard.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967-68

1   (9th Cir. 2006) (citing *Firestone Tire Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).
2   Defendants argue that the Amended Plan confers authority on LCN to construe the terms of the
3   plan through the following provision:

> The Administrator shall administer the Plan in accordance with its
> terms and shall have the power and discretion to construe the terms
> of the Plan and determine all questions arising in connection with
> the administration, interpretation, and application of the Plan.

7   (Ex. D ¶ 2.4, ECF 71-4; Ex. E ¶ 2.4, ECF 71-6.)  Plaintiff disagrees that LCN had discretion
8   under the Amended Plan, but does not propose an alternate reading of this provision.  (ECF 73 at
9   5.)  Other courts have interpreted similar plan provisions as granting discretion to plan
10  administrators.  *See, e.g., Nolan v. Heald College*, 551 F.3d 1148, 1150-51, 1153 (9th Cir. 2009)
11  ("[T]he Plan administrator . . . shall have discretionary authority to interpret the terms of the Plan
12  . . . .); *Duvall v. Reliance Standard Life Ins. Co.*, 646 F. Supp. 2d 1188, 1198 (E.D. Cal. 2009)
13  ("The claims review fiduciary has the discretionary authority to interpret the Plan . . . .").
14  Considering the Amended Plan's reference to the Administrator's "discretion" and the similarity
15  of this language to other plan provisions courts have found, persuasively, to grant discretion to
16  plan administrations, this court finds that LCN had discretion to interpret the terms of the
17  Amended Plan.  Therefore, the court reviews defendants' decision under an abuse of discretion
18  standard.

19              2.   Abuse of Discretion

20       "An ERISA administrator abuses its discretion only if it (1) renders a decision
21  without explanation, (2) construes provisions of the plan in a way that conflicts with the plain
22  language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete*
23  *Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).  Additionally, when there is
24  a structural conflict of interest that may affect the administrator's decisions, such as when the
25  administrator both funds the benefits program and reviews claims, the court must consider any
26  impact that this conflict may have had on the administrator's action.  *Montour v. Hartford Life &*
27  *Acc. Ins. Co.*, 588 F.3d 623, 630-31 (9th Cir. 2009).  The impact of a conflict of interest on the
28  court's analysis depends on the severity of the conflict and the particular circumstances of the

8

case. *Id.* While the court's review of whether the administrator committed an abuse of discretion is generally a question of law, traditional rules of summary judgment, set out in Section II of this order, *supra*, apply to consideration of a conflict of interest. *Stephan v. Unum Life Ins. Co. of Amer.*, 697 F.3d 917, 929-30 (9th Cir. 2012).

Although not addressed by either party, a review of the Amended Plan terms reveals the Plan is funded both by participants' and LCN's contributions and that the assets are held in a trust fund. (Plan Summary at 3-5; *see* Amended Plan § 5.1.) Even though LCN is both the partial funder and administrator of the Plan, creating a structural conflict of interest, the fact that the Plan is also funded by employees and held in trust mitigates the severity of the conflict. *See Burke v. Pitney Bows Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1026-27 (9th Cir. 2008). Plaintiff argues that the conflict of interest is significant because Ponce is both Trustee and Administrator; plaintiff also asserts that Cargile is the Administrator. (ECF 73 at 7.) But this court has already ruled that LCN is the Plan Administrator under the terms of the Amended Plan; moreover, plaintiff did not dispute this assertion in defendants' statement of undisputed facts submitted with their motion for summary judgment. (Order, ECF 57, Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts ¶ 2, ECF 72-3.) On the record before the court, Ponce's actions as Trustee are not relevant to whether the structural conflict of interest due to LCN being both Administrator and partial funder of the Plan affected LCN's actions. Because there is no evidence that LCN acted with bias or inaccurately in reviewing claims and in light of the factors discussed above, the court concludes that the influence of LCN's conflict was negligible. *See Renfro v. Funky Door Long Term Disability Plan*, 686 F.3d 1044, 1049-51 (9th Cir. 2012) (court accorded little weight to conflict of interest when there was no evidence of inconsistency or bias in reviewing plaintiff's claim).

Plaintiff argues that LCN abused its discretion by violating the terms of the Amended Plan. Specifically, plaintiff argues that LCN improperly conducted a revaluation of the Plan after the end of the 2007-2008 Plan year instead of "during" the Plan year as required by the Amended Plan terms. (ECF 73 at 5.) In plaintiff's view, the only two possible valuation dates relevant to determining the amount of his benefits were the date of his termination or the Plan

9

Anniversary Date of July 31, 2008. (*Id.*) Defendants argue that Section 1.83 of the Amended Plan plainly allowed LCN to choose November 21, 2008 as the valuation date. (ECF 65 at 10.)

Although not clearly argued by plaintiff, it appears that plaintiff disagrees that defendants could have conducted a valuation after the end of the 2007-2008 Plan Year because plaintiff was not a voluntary participant in the Plan after July 31, 2008. (ECF 73 at 7.) As the court understands this argument, LCN's valuation of the Plan in November 2008, during the 2008-2009 Plan Year, was invalid as to plaintiff because he had already terminated his participation, ostensibly because he had left his job at LCN. However, plaintiff has not explained how LCN's determination that plaintiff remained a Plan participant until he received his benefits is inconsistent with the plain language of the Amended Plan. (*See* Amended Plan § 1.56 ("'Participant' means any Employee or Former Employee who has satisfied the requirements of Sections 3.1 [defining conditions of eligibility] and 3.2 [defining effective date of participation] and entered the Plan and is eligible to accrue benefits of the Plan.").) Plaintiff points to no provision of the Amended Plan prohibiting LCN from assessing plaintiff's benefits using a valuation that occurred after his termination date. In sum, there is no disputed issue of fact regarding whether LCN abused its discretion as administrator. The court grants defendants' motion for summary judgment as to plaintiff's second, sixth and eighth claims and denies plaintiff's motion for summary judgment as to these claims.

C. Breach of Fiduciary Duty

Plaintiff asserts that defendants breached their fiduciary duties by calculating his benefits based on a different valuation date than the one used to calculate his former coworkers' benefits. (ECF 73 at 6.) Under ERISA, all fiduciaries must act with "care, skill, prudence and diligence" in administering an employee benefits plan. 29 U.S.C. § 1104(a)(1)(B). "These duties are the highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (citations, quotations omitted).

Defendants argue first that Cargile is not a fiduciary and thus cannot be liable for breaching fiduciary duties. (ECF 65 at 8.) A fiduciary is a person with discretionary authority or control over the management of a plan or its assets, or one who is paid to give investment advice.

10

1  29 U.S.C. § 1002(21)(A).  Defendants have provided evidence that Cargile is an employee and
2  shareholder of BCS, which is the agent of the Plan, but has no authority or control over the Plan.
3  Although plaintiff disputes Cargile's role, he has offered no evidence showing that Cargile had
4  control over the Plan.  On this record, there is no disputed issue of fact regarding whether Cargile
5  is a fiduciary to the Plan beneficiaries.

6  While defendants concede that LCN and Ponce owed fiduciary duties to the Plan
7  members (ECF 65 at 13), plaintiff has presented no evidence showing that they breached these
8  duties.  Plaintiff suggests that defendants "abuse[d] their positions of power and control to take
9  advantage of the plaintiff and to misappropriate his stock" (ECF 73 at 6), but offers no alternative
10  to defendants' explanation that the November 2008 revaluation was conducted to protect the
11  interests of the Plan members as a group in reaction to losses in the Plan's investments.

12  In a case with similar facts, *Wakamatsu v. Oliver*, the court determined that the
13  administrator did not breach its fiduciary duties under ERISA.  868 F. Supp. 2d 866 (N.D. Cal.
14  2012).  Under the terms of the employer-sponsored plan in *Wakamatsu*, the administrator was
15  required to conduct annual valuations, but could also choose interim valuation dates.  *Id.* at 869.
16  The plan stated that the amount of a participant's distribution would be based on the most recent
17  valuation.  *Id.*  A beneficiary retired in October 2006 and received a letter in December 2008,
18  which provided a figure of her estimated benefits using the last valuation, from December 31,
19  2007.  *Id.*  The letter explained that the benefits could increase or decrease if the beneficiary did
20  not receive her distribution by December 31, 2008.  *Id.*  The beneficiary completed the forms to
21  claim her benefits on December 17.  *Id.*  However, the administrator decided to calculate her
22  benefits based on the upcoming December 31, 2008 valuation instead of the 2007 valuation,
23  causing plaintiff to receive a significantly lower amount than the estimate she had been given.  *Id.*
24  The court determined that the administrator acted reasonably because the plan account had
25  suffered an unforeseen loss in value in 2008, meaning the 2008 valuation was a more accurate
26  depiction of the account's value when plaintiff received her benefits and fairly allocated losses
27  among plaintiff and other plan members. *Id.* at 873-74.
28  /////

Here, as in *Wakamatsu*, defendants acted reasonably to protect plan participants as a group in choosing to conduct a revaluation of the Plan in November 2008 after the Plan assets had decreased in value. The decision to assess plaintiff's benefits based on the November 2008 valuation was reasonable and consistent with the obligations of LCN and Ponce to act in the best interest of all Plan members. Defendants' motion for summary judgment is granted as to plaintiff's ninth cause of action for breach of fiduciary duty, and plaintiff's motion for summary judgment as to this same claim is denied.

IV.   CONCLUSION

In light of the foregoing, defendants' motion for summary judgment is GRANTED; plaintiff's motion for summary judgment is DENIED. This case is closed.

DATED: August 7, 2013.

_____
UNITED STATES DISTRICT JUDGE